IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL DWAYNE RODGERS,<br><br>    Plaintiff,<br><br>  v.<br><br>DON HORSLEY, et al.,<br><br>    Defendants. | No. C 07-0520 SBA (PR)<br><br>**ORDER OF SERVICE** |

## INTRODUCTION

Plaintiff Russell Dwayne Rodgers, a former inmate at San Mateo County Jail (SMCJ), has filed this civil rights action under 42 U.S.C. § 1983, alleging violations of his constitutional rights, including the use of excessive force in violation of the Eighth Amendment, retaliation, due process violations, and deliberate indifference to his safety. His motion for in forma pauperis has been granted. Thereafter, Plaintiff filed an amended complaint.

Venue is proper in this district because the injuries complained of occurred while Plaintiff was incarcerated at SMCJ, which is located within the Northern District of California. See 28 U.S.C. §§ 84(a), 1391(b).

## BACKGROUND

The following facts are derived from the allegations in Plaintiff's amended complaint, which are taken as true and construed in the light most favorable to Plaintiff for purposes of the Court's initial review of the complaint. See Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995).

### I. Plaintiff's First Period of Confinement

On December 14, 2006, Plaintiff was placed in administrative segregation housing (Ad Seg), Unit 3 West, in retaliation for an earlier dispute he had with Defendant Justice. (Am. Compl. at 2.)[1]

---

[1] Plaintiff's amended complaint begins with page "3" on the first page; however, the Court has re-numbered it as page "1," and it will refer to the re-numbered pages when citing to this document.

He was given no hearing in which to contest the placement. (Id.) The Court infers from the record that Plaintiff remained in Ad Seg until he was released from custody on February 25, 2007, for a total of approximately two and a half months.

On December 14, 2006, Defendant Goulart entered and ransacked Plaintiff's cell, destroying his personal property. (Id. at 4.) Plaintiff claims this was in retaliation against Plaintiff for filing grievances. (Id.) Defendant Goulart stated to Plaintiff that this was to "'show how things worked in 3 West/B housing.'" (Id.) On December 23, 2006, Defendant Hoss "falsely accused Plaintiff of disrespecting staff . . . ." (Id.) This false accusation led to Plaintiff's placement in cell confinement status. (Id.) Plaintiff does not indicate what his placement in "cell confinement" entailed, or how long it lasted.

On January 7, 2007, Defendant Firkins assaulted Plaintiff "by forcefully throwing a carton of milk through Plaintiff's tray slot, striking Plaintiff in the face, and refused to feed Plaintiff, because Plaintiff had written him up for misconduct." (Id. at 5.)

On January 13, 2006, Defendants provoked and facilitated an assault on Plaintiff by other inmates. Plaintiff recounts that:

> Officer Goulart would [tell other inmates that Plaintiff was] 'out to get them' . . . and discord/argument would ensue. Due to this . . . , Plaintiff was ordered to return to his cell and lock-up . . . . Though the inmates of 3W/B-8 did not have rec. time coming, and were on lock-down status for the remainder of the day, officers Goulart, Huerta, and Gloria released the inmates from 3W/B-8 from their cell, in disregard to Plaintiff's safety. The inmate(s) went to Plaintiff's cell (unhindered) carrying a carton filled with human wastes, and splashed Plaintiff and his cell with the contents. When they were first released from their cell and started up the stairs towards Plaintiff's cell with the ill concealed carton, Plaintiff activated/pushed his microphone (emergency) button to better alert unit officers; but they later proclaimed they were distracted.

(Id. at 6-7.) Plaintiff does not allege that he was injured in this altercation.

**II.    Plaintiff's Second Period of Confinement**

After Plaintiff's release from custody on February 27, 2007, he was returned to SMCJ on April 26, 2007 "to complete a term." (Id. at 8.) Upon arrival at SMCJ, Plaintiff was housed again in

2

3 West, the "solitary isolation" housing unit in which he had previously been placed.[2]

On April 29, 2007, Defendants used excessive force upon Plaintiff in his cell:

> Officer Goulart accompanied by officer Marcussen came to Plaintiff's cell and (while Plaintiff stood in cell doorway in anticipation of counseling/instruction) shoved Plaintiff mightily. Plaintiff stumbled back -- approximately 10 feet -- to his bunk and set (sic) down heavily. Officers Goulart and Marcussen approached Plaintiff (side by side) and began to pummel/ beat him brutally with closed fist (mostly punching Plaintiff's head). Plaintiff cried out for help while covering. The beating continued several minutes. Plaintiff was then forced to the floor and ordered to cross his ankles, then shackled and cuffed. One of the officers also pushed/slammed Plaintiff's head against the cement floor several times . . . . Plaintiff was later bandaged because the worst visible injury was an ugly gash to the forehead, above the right eye . . . caused by the officers punches and/or contact with the cement floor . . . . The def. Goulart falsified a report . . . . With Lt. Schumaker present, Plaintiff was ordered to discard bloody shirt and pictures were taken by Goulart, disrupting any investigation and evidence. Plaintiff served approximately 30 days in solitary confinement.

(Id. at 9.) Plaintiff attempted to appeal to the Sheriff on this matter, but his appeal was returned to him "with a response telling Plaintiff not to abuse the appeal system with useless grievances." (Id.)

In a final incident, on May 11, 2007, Plaintiff spat on the ground while being escorted to court. Officer Jurow "wrote a false report accusing Plaintiff of disrespect and desecrating jail property . . . ." (Id. at 10.) This led to Plaintiff's placement in "3W/C punitive solitary isolation." (Id.) The Court construes this to be an allegation that Plaintiff was placed in solitary isolation without due process of law.

Plaintiff filed the present amended complaint on August 15, 2007, alleging that Defendants violated his federal and state constitutional rights based on these incidents. He seeks monetary damages.

## **STANDARD OF REVIEW**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that

---

[2] It is unclear whether there is a relevant distinction between units 3 West B and 3 West A. If there is a difference, Plaintiff should make clear in his amendment to the complaint what that difference is and when he was housed in each of these units.

1  are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary
2  relief from a defendant who is immune from such relief.  See id. § 1915A(b)(1), (2).  However, pro
3  se pleadings must be liberally construed.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699
4  (9th Cir. 1988).

5      To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:
6  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the
7  alleged violation was committed by a person acting under color of state law.  See West v. Atkins,
8  487 U.S. 42, 48 (1988).

## DISCUSSION

### I. Legal Claims

#### A. Excessive Force

A prisoner has the right to be free from cruel and unusual punishment, including physical abuse by guards.  Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 317 (1986)).  In making this determination, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  See Hudson, 503 U.S. at 7; see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).  If the force officers use is so disproportionate to that required that it suggests deliberate sadism, the use of force violates the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 322 (1986); Madrid v. Gomez, 889 F. Supp. 1146, 1172 (N.D. Cal. 1995) (finding that although cell extractions are "an essential tool in maintaining security in any prison," pattern of unnecessary extractions and massive force employed violated Eighth Amendment).

Still, not every criticism of an officer's conduct suggests excessive force.  Whitley, 475 U.S.

United States District Court
For the Northern District of California

4

at 322. The Eighth Amendment does not prohibit uses of force that appear unreasonable in hindsight, so long as the officers were acting in good faith and for a legitimate end. Id.; compare Clement v. Gomez, 298 F.3d 898, 903-04 (9th Cir. 2002) (applying Eighth Amendment "malicious and sadistic" standard to prison pepper spray incident) with Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1198-1206 (9th Cir. 2000), vacated on other grounds, 533 U.S. 194 (2001) (applying Fourth Amendment "objectively reasonable" excessive force standard to police use of pepper spray). In order for an Eighth Amendment excessive force case to go to the jury, the evidence must go "beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives" to support "a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322.

Construing the complaint liberally, Plaintiff alleges that excessive force was used in two incidents: (1) when Defendants threw a carton of milk at him on January 7, 2007; and (2) when they entered his cell and assaulted him on April 29, 2007.[3] The Court finds the first of these claims is not constitutionally cognizable. Throwing a milk carton is a de minimis use of force. As such, the Court DISMISSES Plaintiff's claim against Defendant Firkins for throwing a carton of milk at him because there was no allegation that Plaintiff was injured as a result. (Am. Compl. at 5.) As to the second claim, Plaintiff asserts that Defendants Marcussen and Goulart entered Plaintiff's cell and "pummeled" him. (Id. at 9.) Plaintiff further states that even after he was handcuffed and shackled, Defendants continued to slam his head against the floor, and that as a result, Plaintiff sustained a gash over the eye. (Id.) The Court orders service of this claim on Defendants Marcussen and Goulart.

In order to state an excessive force claim against officer-bystanders, Plaintiff must allege circumstances demonstrating that these officers had an opportunity to intervene and prevent or curtail the violation (e.g., enough time to observe what was happening and intervene to stop it), but failed to do so. See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure

---

[3] Plaintiff also alleges a third assault on him by other SMCJ inmates. The Court construes this as a claim of deliberate indifference to Plaintiff's safety and addresses it in a separate section below.

5

to intervene to prevent Eighth Amendment violation may be basis for liability). Because there is no indication from the alleged facts that either Defendant Jurow or Schumaker was in a position to intervene and curtail the assault, the Court DISMISSES WITH LEAVE TO AMEND the excessive force claim against Defendants Jurow and Schumaker.[4] Plaintiff may reassert the excessive force claim against Defendants Jurow and Schumaker in an amended complaint if he can in good faith allege sufficient facts to demonstrate that they had an opportunity to intervene and prevent the assault against him by Defendants Goulart and Marcussen.

Accordingly, the Court DISMISSES the excessive force claim against Defendant Firkins, finds COGNIZABLE the April 29, 2007 excessive force claim against Defendants Goulart and Marcussen, and DISMISSES WITH LEAVE TO AMEND the excessive force claim against Defendants Jurow and Schumaker.

### B. Due Process Violations

Construing his complaint liberally, Plaintiff alleges that the following deprivations violated his constitutional right to due process: (1) his placement in 3 West punitive isolation housing on December 14, 2006, without a hearing; (2) his placement in "cell confinement" on December 23, 2006 based on a false accusation; and (3) Defendants' tampering with the evidence following the April 29, 2007 assault in order to thwart an accurate investigation, and the thirty-day placement in solitary confinement that ensued.[5]

In Toussaint v. McCarthy, the Ninth Circuit held that when prison officials initially determine whether a prisoner is to be segregated for administrative reasons due process requires that they comply with the following procedures: (1) they must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, (2) the prisoner must be informed of the

---

[4] The Court will construe the allegation that Defendants Jurow and Schumaker were involved in covering up the assault as an allegation that they conspired to deny Plaintiff his due process right to prove his innocence at a disciplinary hearing on the assault. The Court will address this issue in the due process section below.

[5] Plaintiff does not seem to allege that his immediate placement into Ad Seg upon his return to SMCJ in April, 2007 was without a hearing or that it otherwise violated his rights. (Am. Compl. at 8.) Therefore, the Court does not address Plaintiff's re-housing in Ad Seg.

1 charges against him or the reasons segregation is being considered, and (3) the prisoner must be
2 allowed to present his views. See Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986).  Due
3 process does not require detailed written notice of charges, representation by counsel or counsel-
4 substitute, an opportunity to present witnesses, a written decision describing the reasons for placing
5 the prisoner in administrative segregation or disclosure of the identity of any person providing
6 information leading to placement of a prisoner in administrative segregation. See id. at 1100-01.

   Before a prisoner may be placed in disciplinary segregation for a violation of prison rules, he or she must be afforded greater procedural protections than those set out in Toussaint. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." See Wolff v. McDonnell, 418 U.S. 539, 564 (1974).  Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." See id.  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566.  Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

   In Superintendent v. Hill, 472 U.S. 445, 455 (1985), the Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless there is "some evidence" in the record to support the findings of the prison disciplinary board. The Ninth Circuit requires that "some evidence" also support a decision to place an inmate in segregation for administrative reasons. See Toussaint, 801 F.2d at 1104. The standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. See id. at 1105 (citing Hill, 472 U.S. at 455). Ascertaining whether the standard is satisfied does not require examination of the entire

record, independent assessment of the credibility of witnesses or weighing of the evidence. See id. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached. See id.

The Ninth Circuit also requires that the evidence relied upon by prison <u>disciplinary</u> boards contain "some indicia of reliability," see Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987), but has not directly considered whether a corresponding need for evidentiary reliability exists when prison officials segregate an inmate for <u>administrative</u> reasons. Some district courts have extended the reliability requirement to the administrative context, however, holding that "the evidence relied upon to confine an inmate to the SHU for gang affiliation must have 'some indicia of reliability' to satisfy due process requirements." Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995).

Plaintiff alleges that no hearing was held before his first placement in 3 West punitive isolation housing on December 14, 2006. He further alleges that the placement was made based on false accusations. The Court finds that Plaintiff has stated a cognizable claim because he alleges he was not afforded any hearing at all, much less a hearing complying with Wolff. Therefore, the Court finds COGNIZABLE Plaintiff's due process claim regarding his placement in Ad Seg in Unit 3 East and/or 3 West on December 14, 2006 against Defendants Justice, Mitchell, Denton, Schumaker, and Overman, who all seem to have been involved in the classification decision. (Am. Compl. at 2.)

Plaintiff next alleges that his placement in "cell confinement" beginning December 23, 2006 was based on a false accusation by Defendant Hoss. (Id. at 4.) It is unclear from the amended complaint what proceedings or findings supported this placement in "cell confinement." It is also unclear whether the placement took place during the pendency of a disciplinary hearing or after a rules violation was found at such a hearing. Furthermore, as mentioned earlier, Plaintiff fails to alleged what his placement in "cell confinement" entailed, or how long it lasted. Without these basic facts, the Court cannot assess the merit of Plaintiff's claim. Accordingly, the Court DISMISSES WITH LEAVE TO AMEND Plaintiff's claim relating to his placement in "cell confinement" against Defendant Hoss and Doe Defendant #69.

Plaintiff also contends that immediately after Defendants Goulart and Marcussen assaulted him in his cell on April 29, 2007, Defendants Goulart, Marcussen, Jurow and Schumaker were

involved in falsifying a report against Plaintiff to blame him for the assault and discarding Plaintiff's bloody shirt, thereby "'disrupting' any investigation." (Am. Compl. at 9.) It is unclear from the record what evidence the prison disciplinary board considered in ordering Plaintiff to serve thirty days in solitary confinement as a result of the April 29, 2007 incident. Regardless, Plaintiff should have been able to offer a defense, and the disciplinary board is required to have rested its findings on evidence that bore some indicia of reliability, as outlined above. The Court thus orders service of this claim on Defendants Goulart, Marcussen, Jurow and Schumaker, so that they may address the allegations in the complaint regarding any due process violations during the aftermath of the April 29, 2007 assault.

Accordingly, the Court finds COGNIZABLE and orders service of the due process claim against Defendants Justice, Mitchell, Denton. Schumaker, and Overman relating to Plaintiff's placement in Ad Seg on December 14, 2006. The claim against the Head of Classification, named as John Doe #2, is also cognizable but will be addressed as a Doe Defendant below. The Court DISMISSES WITH LEAVE TO AMEND Plaintiff's claim against Defendant Hoss regarding his placement in "cell confinement" on December 31, 2006. The Court finds COGNIZABLE and orders service of Plaintiff's due process claim against Defendants Goulart, Marcussen, Jurow, and Schumaker regarding the investigation of the April 29, 2007 assault and the punitive housing placement imposed as a result thereof.

### C. Falsification of Reports

Plaintiff alleges numerous times that Defendants falsified reports against him. However, a prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), cert. denied, 485 U.S. 982 (1988). While Plaintiff claims there were false rules violations reports made against him, his allegations do not state a due process violation in the absence of actual deprivations resulting from such reports. Accordingly, the Court DISMISSES Plaintiff's claim stemming from the allegation that Defendants Goulart and Jurow falsified a report on May 11, 2007 because it is not sufficient to state a constitutional injury under the Due Process Clause. See Paul v. Davis, 424 U.S. 693, 711-14 (1976); see also Reyes v. Supervisor of Drug

1 Enforcement Admin., 834 F.2d 1093, 1097 (1st Cir. 1987) (no due process claim for false
2 information maintained by police department); Pruett v. Levi, 622 F.2d 256, 258 (6th Cir. 1980)
3 (mere existence of inaccuracy in FBI criminals files does not state constitutional claim).

### D.     Deliberate Indifference to Safety

5 Plaintiff alleges that on January 3, 2007, Defendants Goulart, Huerta, and Gloria instigated
6 and then facilitated an attack on Plaintiff by "inmates from 3W/B-8" in which they "went to
7 Plaintiff's cell . . . carrying a carton filled with human wastes, and splashed Plaintiff and his cell with
8 the contents." (Am. Compl. at 7.) Further, Plaintiff alleges that when he pushed his emergency
9 button to alert prison staff, they failed to respond. (Id.) The Court construes this as a claim of
10 deliberate indifference to Plaintiff's safety needs under the Eighth Amendment.

11 The Eighth Amendment requires that prison officials take reasonable measures to guarantee
12 the safety of prisoners. Farmer v. Brennan, 511 U.S. 825, 832 (1994). In particular, prison officials
13 have a duty to protect prisoners from violence at the hands of other prisoners. Id. at 833; Hearns v.
14 Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005); Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir.
15 1982); Gillespie v. Civiletti, 629 F.2d 637, 642 & n.3 (9th Cir. 1980). The failure of prison officials
16 to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates
17 the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is,
18 objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to
19 inmate safety. Farmer, 511 U.S. at 834; Hearns, 413 F.3d at 1040-41.

20 Plaintiff alleges that Defendant Goulart taunted other inmates in an attempt to instigate a
21 disturbance between them and Plaintiff. Plaintiff alleges that Defendants Goulart, Huerta, and
22 Gloria released these inmates and allowed them to approach Plaintiff's cell "unhindered." (Am.
23 Compl. at 6.) Accordingly, Plaintiff has stated a COGNIZABLE Eighth Amendment claim for
24 deliberate indifference to his safety needs against Defendants Goulart, Huerta, and Gloria based on
25 this incident.

### E.     Retaliation

27 Plaintiff alleges that Defendant Goulart ransacked Plaintiff's cell on an unknown date, in

10

retaliation against Plaintiff for filing grievances. (Am. Compl. at 4.) Prisoners may not be retaliated against for exercising their right of access to the courts, Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995), which extends to established prison grievance procedures. Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Accord Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation).

A prisoner must at least allege that he suffered harm, since harm that is more than minimal will almost always have a chilling effect. Rhodes, 408 F.3d at 567-68 n.11; see Gomez v. Vernon, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (prisoner alleged injury by claiming he had to quit his law library job in the face of repeated threats by defendants to transfer him because of his complaints about the administration of the library); Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a retaliation claim is not actionable unless there is an allegation of harm). However, here, Plaintiff seems to be alleging more that the "ransacking" of the cell dispossessed him of his property than that it had a chilling effect on the exercise of his First Amendment Rights. He does not allege that the destruction of his property prevented him from filing further grievances, or even that it had a chilling effect on his ability to do so. Indeed, he continued to file numerous grievances. Because there is no constitutionally cognizable harm as a result of the "ransacking" of the cell, this incident does not amount to a claim of retaliation. Accordingly, the Court DISMISSES Plaintiff's retaliation claim.

11

### F. Claims Against Doe Defendants

Plaintiff names the San Mateo County Commissioner as John Doe #1. (Am. Compl. at 1.) Plaintiff also names the Classification Head as John Doe #2 in his due process claim regarding his placement in Ad Seg around December 12, 2006 without a hearing. (Id. at 2.) Finally, Plaintiff names "John Doe #2, Head Librarian" on the front page of his amended complaint. (Id. at 1.)

The use of Doe Defendants is not favored in the Ninth Circuit. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, where the identity of alleged defendants cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to identify them. Id. Failure to afford the plaintiff such an opportunity is error. See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).

A supervisor may be liable under § 1983 upon a showing of personal involvement in the constitutional deprivation or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045. A supervisor may be liable for implementing "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman, 942 F.2d at 1446; see Jeffers v. Gomez, 267 F.3d 895, 917 (9th Cir. 2001).

Accordingly, the claims against the San Mateo County Commissioner, Doe Defendant #1, in his capacity as a supervisor, are DISMISSED from this action without prejudice. Should Plaintiff learn of Defendant's identity he may move to file an amendment to the complaint to add him as a named defendant. See Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003). However, if Plaintiff is alleging that Doe Defendant #1 is liable as a supervisor, Plaintiff must allege that he "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff's due process claim against John Doe #2, the Classification Head, who Plaintiff asserts was directly involved in approving the decision to place Plaintiff into Ad Seg on December

14, 2006 is COGNIZABLE. Therefore, the Court also DISMISSES him from this action without prejudice, so that Plaintiff may learn of Defendant's identity. When he does, he may move to file an amendment to the complaint to add him as a named defendant. See Brass, 328 F.3d at 1195-98.

Finally, Plaintiff's claims against John Doe #3, the head librarian, are DISMISSED because Plaintiff fails to link John Doe #3 to the allegations in the complaint. Even if he had sufficiently linked John Doe #3, the use of Doe Defendants is not favored in the Ninth Circuit. See Gillespie, 629 F.2d at 642. Therefore, the Court also DISMISSES John Doe # 3 from this action without prejudice, so that Plaintiff may learn of Defendant's identity and link this Defendant to his claims. When he does, he may move to file an amendment to the complaint to add him as a named defendant. See Brass, 328 F.3d at 1195-98.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's excessive force claim against Defendant Firkins regarding the milk carton incident of January 7, 2007 is DISMISSED.

2. Plaintiff has stated a COGNIZABLE claim of excessive force against Defendants Goulart and Marcussen regarding the April 29, 2007 incident. Plaintiff's excessive force claim against Defendants Jurow and Schumaker regarding the same incident is DISMISSED WITH LEAVE TO AMEND.

3. Plaintiff has stated a COGNIZABLE due process claim against Defendants Justice, Mitchell, Denton, Schumaker, and Overman relating to Plaintiff's placement in Ad Seg on December 14, 2006.

4. Plaintiff's due process claim against Defendant Hoss regarding Plaintiff's placement in "cell confinement" on December 23, 2006 is DISMISSED WITH LEAVE TO AMEND.

5. Plaintiff has stated a COGNIZABLE due process claim against Defendants Goulart, Marcussen, Jurow and Schumaker regarding the investigation of the April 29, 2007 assault and the housing placement that resulted.

6. Plaintiff's claim against Defendants Goulart and Jurow for the falsification of a report on May 11, 2007 is DISMISSED.

7. Plaintiff has stated a COGNIZABLE claim of deliberate indifference to safety against Defendants Goulart, Huerta, and Gloria.

8. Plaintiff's retaliation claim against Defendant Goulart regarding the ransacking of his cell on an unknown date is DISMISSED.

9. Plaintiff's claims against the above-referenced Doe Defendants are DISMISSED from this action without prejudice.

10. Within **thirty (30) days** of the date of this Order Plaintiff may file amended claims of (1) excessive force against Defendants Jurow and Schumaker regarding the April 29, 2007 incident and (2) due process against Defendant Hoss regarding Plaintiff's placement in "cell confinement" on December 23, 2006, as set forth above. (Plaintiff shall resubmit only those claims in an amendment to the complaint and not the entire complaint.) The failure to do so will result in the dismissal without prejudice of these claims against the aforementioned Defendants..

11. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, copies of: (1) the amended complaint as well as copies of all attachments thereto (docket no. 24); (2) a copy of this Order upon: **Defendants Sergeant Denton, Lieutenant Schumaker, and Officers Goulart, Marcussen, Justice, Mitchell, Overman, Jurow, Huerta, and Gloria at SMCJ.** The Clerk shall also mail copies of these documents to the San Mateo County Counsel's Office. Additionally, the Clerk shall serve a copy of this Order on Plaintiff.

12. The case has been pending for almost three years and there is no reason for further delay. In order to expedite the resolution of this case, the Court orders as follows:

   a. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. In addition, no later than **thirty (30) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date their summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

   b. Plaintiff's opposition to the dispositive motion shall be filed with the Court

and served on Defendants no later than **thirty (30) days** after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff is advised that if he fails to submit declarations contesting the version of the facts contained in Defendants' declarations, Defendants' version may be taken as true and the case may be decided in Defendants' favor without a trial. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his

complaint.

    c. If Defendants wish to file a reply brief, they shall do so no later than **fifteen (15) days** after the date Plaintiff's opposition is filed.

    d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

  13. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

  In order to maintain the aforementioned briefing schedule, all discovery requests must be served on the opposing party on or by **January 11, 2010** and all discovery responses must be served on or by **February 1, 2010**. In the event that Defendants file a motion for summary judgment, Plaintiff shall file his opposition to the motion for summary judgment even if he intends to file a motion to compel discovery. The discovery motion shall be submitted together with Plaintiff's opposition to the motion for summary judgment, and Defendants' response to the discovery motion shall be submitted on or by the date their reply to Plaintiff's opposition is due. If the Court decides any filed discovery motion in Plaintiff's favor, he will be granted the opportunity to file a supplemental opposition to the motion for summary judgment.

  14. All communications by Plaintiff with the Court must be served on Defendants, or their counsel once counsel has been designated, by mailing a true copy of the document to Defendants or their counsel.

  15. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

  16. Because this case has been pending for almost three years, **no further extensions of time will be granted in this case absent exigent circumstances**. If exigent circumstances exist, the party making a motion for an extension of time is not relieved from his or her duty to comply with

1  the deadlines set by the Court merely by having made a motion for an extension of time.  The party
2  making the motion must still meet the deadlines set by the Court until an order addressing the
3  motion for an extension of time is issued.  Any motion for an extension of time must be filed no later
4  than **fifteen (15) days** prior to the deadline sought to be extended.

    IT IS SO ORDERED.

DATED: 11/16/09

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE

P:\PRO-SE\SBA\CR.07\Rodgers0520.service.frm 17

NORTHERN DISTRICT OF CALIFORNIA

RUSSELL D. RODGERS,

        Plaintiff,

  v.

DON HORSLEY et al,

        Defendant.

Case Number: CV07-00520 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 16, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Russell Dwayne Rodgers
2458 Illinois Street
East Palo Alto, CA 94303

Dated: November 16, 2009

        Richard W. Wieking, Clerk
        By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.07\Rodgers0520.service.frm 18