IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL DWAYNE RODGERS,<br><br>              Plaintiff,<br>v.<br><br>DON HORSLEY, et al.,<br><br>              Defendants. | No. C 07-0520 SBA (PR)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS**<br><br>(Docket no. 49) |

       Plaintiff Russell D. Rodgers, a former inmate at San Mateo County Jail (SMCJ), filed this pro se civil rights action under 42 U.S.C. § 1983. He filed an amended complaint alleging violations of his constitutional rights by SMCJ staff, including the use of excessive force, retaliation, due process claims, and deliberate indifference to his safety. Specifically, Plaintiff alleges, inter alia, that, over the course of two separate periods of confinement, the following constitutional violations occurred:

       (1) on December 14, 2006, Lieutenants Schumaker and Denton as well as Deputies Justice, Overman, and Mitchell placed Plaintiff in administrative segregation (Ad Seg) without a hearing in which to contest the placement;

       (2) on January 13, 2007, Deputies Goulart, Huerta, and Gloria provoked and facilitated an assault on Plaintiff by other inmates;

       (3) on April 29, 2007, Deputies Goulart and Marcussen attacked and beat Plaintiff in his cell; and

       (4) also on April 29, 2007, as a result of the aforementioned fight, Deputies Goulart, Marcussen, Jurow, and Schumaker placed Plaintiff in Ad Seg without giving him a proper opportunity to offer a defense.

       On November 16, 2009, the Court found cognizable Plaintiff's claims of due process, deliberate indifference to safety, and excessive force stemming from some of the aforementioned

incidents. As explained below, Plaintiff's remaining claims were eventually dismissed. The Court ordered the United States Marshal to serve Defendants Justice, Mitchell, Denton, Schumaker, Overman, Goulart, Huerta, Gloria, Marcussen, and Jurow.

Before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). Plaintiff has filed an opposition, and Defendants have filed a reply.

For the reasons discussed below, the Court GRANTS Defendants' motion to dismiss.

## BACKGROUND

### I. Factual Summary

The following facts are taken from Plaintiff's verified amended complaint as well as from the declaration of Assistant Sheriff Trisha L. Sanchez, who was the Facility Commander at SMCJ from January, 2005 to June, 2007. (Sanchez Decl. ¶ 2.)

Plaintiff has been incarcerated at SMCJ at least twenty-two times dating back to 1993. (Id. ¶ 6.) As mentioned above, the relevant claims in the present case stem from two separate periods of confinement.

#### A. First Period of Confinement - December 2006 through February 2007

On December 14, 2006, Plaintiff was placed in Ad Seg, Unit 3 West, in retaliation for an earlier dispute he had with Defendant Justice. (Am. Compl. at 2.)[1] Plaintiff claims he was given no hearing in which to contest the placement. (Id.) The Court infers from the record that Plaintiff remained in Ad Seg until he was released from custody on February 25, 2007, for a total of approximately two and a half months.

On December 14, 2006, Plaintiff alleges Defendant Goulart entered and ransacked his cell, destroying his personal property. (Id. at 4.) Plaintiff claims this was in retaliation against him for

---

[1] Plaintiff's amended complaint begins with page "3" on the first page; however, the Court has re-numbered it as page "1," and it will refer to the re-numbered pages when citing to this document.

2

filing grievances. (Id.) According to Plaintiff, Defendant Goulart stated that this was to "'show how things worked in 3 West/B housing.'" (Id.) On December 23, 2006, Plaintiff alleges Defendant Hoss "falsely accused Plaintiff of disrespecting staff . . . ." (Id.) According to Plaintiff, this false accusation led to Plaintiff's placement in cell confinement status. (Id.) Plaintiff does not indicate what his placement in "cell confinement" entailed, or how long it lasted.

On January 7, 2007, Plaintiff alleges Defendant Firkins assaulted him "by forcefully throwing a carton of milk through his tray slot, striking him in the face, and subsequently refused to feed him, because Plaintiff had written him up for misconduct." (Id. at 5.)

On January 13, 2006, Plaintiff alleges Defendants provoked and facilitated an assault on him by other inmates. Plaintiff recounts that:

> Officer Goulart would [tell other inmates that Plaintiff was] "out to get them" . . . and discord/argument would ensue. Due to this . . . , Plaintiff was ordered to return to his cell and lock-up . . . . Though the inmates of 3W/B-8 did not have rec. time coming, and were on lock-down status for the remainder of the day, officers Goulart, Huerta, and Gloria released the inmates from 3W/B-8 from their cell, in disregard to Plaintiff's safety. The inmate(s) went to Plaintiff's cell (unhindered) carrying a carton filled with human wastes, and splashed Plaintiff and his cell with the contents. When they were first released from their cell and started up the stairs towards Plaintiff's cell with the ill concealed carton, Plaintiff activated/pushed his microphone (emergency) button to better alert unit officers; but they later proclaimed they were distracted.

(Id. at 6-7.) Plaintiff does not allege that he was injured in this altercation.

### B.  Second Period of Confinement - April 2007 through July 2007

After Plaintiff's release from custody on February 27, 2007, he was returned to SMCJ on April 26, 2007 "to complete a term." (Id. at 8.) Upon arrival at SMCJ, Plaintiff was housed again in 3 West, the "solitary isolation" housing unit in which he had previously been placed.[2]

On April 29, 2007, Plaintiff claims Defendants used excessive force upon him in his cell:

> Officer Goulart accompanied by officer Marcussen came to Plaintiff's cell and (while Plaintiff stood in cell doorway in anticipation of counseling/instruction) shoved Plaintiff mightily. Plaintiff stumbled back -- approximately 10 feet -- to his bunk and set [sic] down heavily. Officers Goulart and Marcussen approached Plaintiff (side by side) and began to pummel/beat him brutally with closed fist (mostly punching Plaintiff's head). Plaintiff cried out for help while covering. The beating continued several minutes. Plaintiff was then forced to the floor and ordered to cross his ankles, then shackled and cuffed. One of the officers also pushed/slammed Plaintiff's head against the cement floor several times . . . .

---

[2] It is unclear whether there is a relevant distinction between units 3 West B and 3 West A.

3

> Plaintiff was later bandaged because the worst visible injury was an ugly gash to the forehead, above the right eye . . . caused by the officers punches and/or contact with the cement floor . . . . The def. Goulart falsified a report . . . . With Lt. Schumaker present, Plaintiff was ordered to discard bloody shirt and pictures were taken by Goulart, disrupting any investigation and evidence. Plaintiff served approximately 30 days in solitary confinement.

(Id. at 9.)

In a final incident, on May 11, 2007, Plaintiff alleges that he spat on the ground while being escorted to court. According to Plaintiff, Defendant Jurow "wrote a false report accusing him of disrespect and desecrating jail property . . . ." (Compl. at 10.) This led to Plaintiff's placement in "3W/C punitive solitary isolation." (Id.) The Court construed this to be an allegation that Plaintiff was placed in solitary isolation without due process of law. The record indicates that Plaintiff was released from custody on July 8, 2007. (Sanchez Decl. ¶ 6.)

## II.   Procedural Background

On January 25, 2007, Plaintiff filed this pro se civil rights action under 42 U.S.C. § 1983. On August 15, 2007, Plaintiff filed an amended complaint alleging: (1) excessive force; (2) retaliation; (3) due process violations; and (4) deliberate indifference to safety. As Defendants, he named: John Doe No. 1, the San Mateo County Commissioner; John Doe No. 2, the Classification Head; John Doe No. 3, the Head Librarian; and Defendants Schumaker, Denton, Justice, Overman, Firkins, Goulart, Hoss, Huerta, Gloria, Marcussen, Mitchell, and Jurow.

In its Order of Service dated November 16, 2009, the Court found: (1) a cognizable due process claim against Defendants Justice, Mitchell, Denton, Schumaker, and Overman relating to Plaintiff's placement in Ad Seg on December 14, 2006; (2) a cognizable claim of deliberate indifference to safety against Defendants Goulart, Huerta, and Gloria relating to the January 13, 2007 incident; (3) a cognizable claim of excessive force against Defendants Goulart and Marcussen regarding the April 29, 2007 incident; and (4) a cognizable due process claim against Defendants Goulart, Marcussen, Jurow and Schumaker regarding the investigation of the April 29, 2007 assault and resulting housing placement. In the same Order, the Court dismissed with leave to amend Plaintiff's excessive force claim against Defendants Jurow and Schumaker regarding the April 29, 2007 incident, and Plaintiff's due process claim against Defendant Hoss regarding Plaintiff's

4

placement in "cell confinement" on December 23, 2006. The Court dismissed without leave to amend Plaintiff's excessive force claim against Defendant Firkins regarding the milk carton incident of January 7, 2007, Plaintiff's claim against Defendants Goulart and Jurow for the falsification of a report on May 11, 2007, and Plaintiff's retaliation claim against Defendant Goulart regarding the ransacking of his cell on an unknown date. Additionally, the Doe Defendants were terminated from this action without prejudice to Plaintiff filing an amendment to the complaint to add them as named defendants once he learned their identities.

In an Order dated January 20, 2010, the Court found that Plaintiff failed to correct the deficiencies of his excessive force claim against Defendants Jurow and Schumaker as well as his due process claim against Defendant Hoss. The Court dismissed the aforementioned claims without further leave to amend.

In their motion to dismiss, Defendants argue that the Court may not proceed to decide the merits of Plaintiff's surviving claims because he failed to appropriately exhaust all his available administrative remedies. Specifically, Defendants argue that Plaintiff failed to appeal to the highest level of review any of his grievances relating to these claims.

In his opposition, Plaintiff argues: (1) Defendants returned his appeals without a response and labeled his behavior "appeal abuse"; (2) that he always "submits grievances to the highest level possible for resolve . . ."; and (3) that he "has always been told the watch commander or designee is final response." (Opp'n at 1-2.) Also in opposition, as a footnote to the argument that Plaintiff always submits grievances to the highest level, he indicates that Defendants have never "directed Plaint./Grievance(s) toward Facility Commander." (Id. at 2.)

**III.   Administrative Appeals**

During the time period at issue in the instant case, from December 19, 2006 to May 27, 2007, Plaintiff filed approximately thirty-six grievances "concerning issues ranging from medical complaints, to complaints about bias of the inmate discipline hearing board, to unwanted communication with other inmates, to refusal of a canteen employee to provide his name to plaintiff." (Sanchez Decl. ¶ 7, Ex. 3.)

Section 1073 of Title 15 of the California Code of Regulations provides county jail inmates

with a right to "appeal and have resolved grievances" relating to their confinement. Pursuant to Section 1073, San Mateo County has established grievance procedures for inmates at SMCJ. (SMCJ Inmate Grievance Procedure at 1.)[3] An inmate may grieve "any condition of confinement" by first raising the complaint informally with the guard in charge of the inmate's housing unit. (Id.) If the complaint is not resolved, the inmate may then write the complaint on an "Inmate Grievance Form" and hand it to a Deputy/Correctional Officer. (Id.) If the Deputy/Correctional Officer cannot resolve the complaint, the grievance is forwarded to the Housing Sergeant, and then, if the Housing Sergeant cannot resolve it, to the Watch Commander, who will "insure [sic] that the inmate receives a written response within ten days, including the reasons if the grievances is denied." (Id. at 1-2) Finally, an inmate may then appeal the Watch Commander's denial to the Facility Commander of the facility where the inmate is housed. (Id. at 2.)

Plaintiff had constructive knowledge of the grievance procedure embodied in Section 1073 because the Regulations "were posted in each pod at the Maguire Correctional Facility during [Plaintiff's] period of incarceration." (Sanchez Decl. ¶ 5.) Furthermore, Plaintiff had actual knowledge of the exhaustion requirement due to his experience in filing a previous civil suit against San Mateo County sheriff's deputies. See Rodgers v. Horsley, Case No. C 00-00996 (SBA) (PR). In fact, in Case No. C 00-00996 (SBA) (PR), this Court informed Plaintiff that he should have presented each and every claim he wished to bring in federal court to the jail's appeals process before actually raising those claims in a § 1983 action. (May 8, 2000 Order in Case No. C 00-00996 (SBA) (PR) at 2.) From Assistant Sheriff Sanchez's term as Facility Commander beginning January, 2005 through June, 2007, and during her successor John Quinlan's term as the current Facility Commander, Plaintiff never pursued any of his grievances to the Facility Commander's level of review.[4] (Sanchez Decl. ¶ 11.) This failure to do so could indicate that Plaintiff, in the past, may

---

[3] Defendants have included a copy of the Inmate Grievance Procedure as Exhibit 1 to Assistant Sheriff Sanchez's declaration.

[4] Although Assistant Sheriff Sanchez claims that Plaintiff has never pursued his appeals to the Facility Commander's level of review from 2005 to the present, the Court notes that Plaintiff has

have been satisfied with the relief afforded at lower levels of review.  Nevertheless, it does not excuse his failure to fully exhaust his grievances relating to the surviving claims by pursuing them to the Facility Commander's level of review.

In the instant case, there are four separate grievances, identified by date of submission, that correspond to Plaintiff's four surviving claims.  (Sanchez Decl. ¶ 12, Ex. 4-6.)

### A.     December 14, 2006 Grievance

On December 14, 2006, Plaintiff submitted an "Inmate Grievance Form" asserting that he had been placed in "3W-B Isolated Hsg." without "due cause."  (Id., Ex. 4.)  On December 19, 2006, Defendant Justice took and responded to the grievance in writing, indicating that Plaintiff was placed in isolation due to failure to comply with the prison rules and denying his request for relief.  (Id., Ex. 4 at 1-2.)  On December 23, 2006, the grievance was again denied in writing at the Sergeant's level of review.  (Id., Ex. 4.)  On January 1, 2007, the grievance was denied in writing at the Watch Commander's level based on Defendant Justice's December 19, 2006 denial.  (Id.)

There is no record of Plaintiff appealing the Watch Commander's denial to the Facility Commander.  (Sanchez Decl. ¶ 13.)

### B.     January 13, 2007 Grievance

On January 13, 2007, Plaintiff submitted an "Inmate Grievance Form" for first level review, indicating:

> Some P.C./protective custody types gassed [threw human waste] me [and] my cell today (w/out reason, less it be enmity, envy, jealousy, unreasonable [and] misguided hate, or for the fact that they've witness [sic] officers such as Goulart harass [and] abuse me for the past couple of weeks [and] following suit, figured it's the thing to do to past [sic] time, get off their aggressions, and not suffer repricussion [sic] nor punishment).

(Id., Ex. 5.)  Here, there is no indication of a written response at the first level of review.  However, on January 16, 2007, the Sergeant responded in writing indicating that the events above were an "unfortunate incident" and that the other party would be disciplined.  (Id.)  Dissatisfied, on January 17, 2007, Plaintiff took his grievance to the Watch Commander's level of review.  The Watch

---

been incarcerated multiple times dating back to 1993.  Whether Plaintiff was able to pursue his appeals to the Facility Commander's level of review prior to 2005 is not clear from the record before this Court.

7

Commander, in writing, denied any further relief indicating that he did not know what Plaintiff was grieving, and informing Plaintiff "[y]ou are not in solitary isolation but housed in administrative housing for your protection and the safety and security of the facility and staff." (Id.)

Again, there is no record of Plaintiff appealing the Watch Commander's denial to the Facility Commander. (Sanchez Decl. ¶ 13.)

### C.  May 3, 2007 Grievance

On May 3, 2007, Plaintiff submitted an "Inmate Grievance Form" for first level review complaining that he was "(arbitrarily) brutally beaten" by Defendants Marcussen and Goulart on April 29, 2007. (Id., Ex. 6 at 1.) The written response at the first level of review indicates that plaintiff's resulting wounds were treated and that he would continue to be monitored. On May 7, 2007, Plaintiff appealed to the second, supervisory level of review. (Id.) There, in writing, Sergeant Denton indicated that Plaintiff instigated the physical altercation, that a crime report was written, and that Plaintiff was being charged for the attack. (Id.) Dissatisfied with this response, on May 21, 2007, Plaintiff appealed this grievance to the Watch Commander's level of review. (Id.) The Watch Commander indicated in writing that Plaintiff's injuries had been adequately addressed, and that he recommended Plaintiff take further complaints up with his treating physician. (Id.)

Here, again, Plaintiff failed to appeal the Watch Commander's decision to the Facility Commander. (Sanchez Decl. ¶ 13.)

### D.  May 8, 2007 Grievance

On May 8, 2007, Plaintiff submitted an additional "Inmate Grievance Form" stemming from the altercation that occurred on April 29, 2007. (Id., Ex. 6 at 3-4.) There, Plaintiff

> object[ed] to the biased opinions and findings as well as decision by the prejudiced [and] biased Hearing Board which found [him] guilty of violating jail rules #201 and #207 by manipulating facts [and] statements [and] evidence to make it seem harmful instead of helpful to me, they (the Board also felled [sic] to investigate properly [and] include all evidence such as in "findings" by Bd. they say "(Rodgers) own admittance he has taken a severe disliking to Deputy Goulart . . . ."

(Id., Ex. 6 at 3.) Plaintiff also stated, "I believe my due process rights were violated in that I was not allowed to be present (nor was the officer Marcussen supposedly 'available' during hearing) to

8

question the officers accusing me neither allowed to question witness[es] nor be present when/if they were called." (Id., Ex. 6 at 4.) On May 15, 2007, Plaintiff's grievance was denied in writing at the first level of review. (Id.) There, the Officer noted that the hearing was conducted pursuant to Plaintiff's request and that all guidelines and protocol were followed. (Id.) Also on May 15, 2007, the grievance was denied in writing at the supervisory level of review based on the same reasons as the initial denial. (Id.) On May 28, 2007, the Watch Commander reviewed the grievance. (Id.) The sole written note at the Watch Commander level of review is simply that the appeal was "reviewed." (Id.)

Similar to the previous three grievances, Plaintiff did not appeal the Watch Commander's decision to the final level of review with the Facility Commander. (Sanchez Decl. ¶ 13.)

## DISCUSSION

### I.  Legal Standard

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding the conditions of their confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v. Churner, 532 U.S. 731, 739-40 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Booth, 532 U.S. at 741. A prisoner "seeking only money damages must complete a prison administrative process that could provide

some sort of relief on the complaint stated, but no money." Id. at 739.[5]

A prisoner need not exhaust further levels of review once he has either received all the remedies that are "available" at an intermediate level of review, or has been reliably informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005); Marella v. Terhune, 568 F.3d 1024, 1028 (9th Cir. 2009). As there can be no absence of exhaustion unless relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. Brown, 422 F.3d at 936-37.

The PLRA requires *proper* exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 84.

Section 1073 provides county jail inmates with a right to "appeal and have resolved grievances" alleging misconduct by jail staff. As mentioned above, San Mateo County has established grievance procedures for inmates at SMCJ pursuant to Section 1073. (SMCJ Inmate Grievance Procedure at 1.) In order to exhaust available administrative remedies within this system, an inmate must proceed through several levels of appeal: (1) informal resolution; (2) formal written appeal to a Deputy/Correctional Officer on an "Inmate Grievance Form"; (3) appeal to the Housing Sergeant; (4) appeal to the Watch Commander; and (5) appeal to the Facility Commander of the facility where the inmate is housed. (Id. at 1-2.) A final decision from the Facility Commander's

---

[5] That the administrative procedure cannot result in the particular form of relief requested by the prisoner does not excuse exhaustion because some sort of relief or responsive action may result from the grievance. See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion requirement include allowing prison to take responsive action, filtering out frivolous cases, and creating administrative records).

10

level of review satisfies the exhaustion requirement under § 1997e(a).

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). However, a complaint may be dismissed by the court for failure to exhaust if a prisoner "conce[des] to nonexhaustion" and "no exception to exhaustion applies." Id. at 1120.

## II.  Analysis

It is undisputed that Plaintiff failed to appeal to the Facility Commander's level of review any of the aforementioned grievances relating to his surviving claims. Rather, these grievances were abandoned at the Watch Commander's level of review. Plaintiff mounts a number of arguments in defense of his failure to exhaust.

First, Plaintiff argues Defendants returned his appeals without a response and labeled his behavior "appeal abuse." (Opp'n at 1.) However, Section 1073 ensures inmates a written response at the Watch Commander level of review within ten days. (SMCJ Inmate Grievance Procedure at 1-2.) After that point, if the inmate is dissatisfied with the Watch Commander's written response, the onus is on the inmate to pursue his grievance to the Facility Commander's level of review. Here, each of the grievances relating to Plaintiff's surviving claims includes a written response by the Watch Commander. (Sanchez Decl., Ex. 4 at 1-2, Ex. 5 at 1, Ex. 6 at 1-4.) Accordingly, the Court finds unavailing Plaintiff's argument that he didn't receive the requisite level of written response under Section 1073.

Second, Plaintiff argues that he always "submits grievances to the highest level possible for resolve . . . ." (Opp'n at 2.) On each of the relevant grievance forms, Plaintiff wrote "Sheriff" next to the portion of the form indicating "To: (Watch Commander)." (Sanchez Decl., Ex. 4-6.) However, the fact that Plaintiff addressed his grievances to the Sheriff at each level of review does not cure his abandonment of these grievances at the Watch Commander's level. Pursuant to Section 1073, the burden is on the inmate to appeal the Watch Commander's decision to the Facility

11

Commander. In order to properly appeal, the inmate must "write a letter" to the Facility Commander "who will review the grievance and the Watch Commander's response." (SMCJ Inmate Grievance Procedure at 2.) Here, despite the fact that Plaintiff addressed all of his grievances to the "Sheriff" at lower levels of review, he failed to comply with Section 1073 because he did not pursue his grievances to the Facility Commander's level of review. Again, the Court finds unavailing Plaintiff's argument that addressing the lower level grievances to the "Sheriff," in and of itself, should fully exhaust his claims.

Finally, Plaintiff contends that he "has always been told the watch commander or designee is [the] final response." (Opp'n at 2.) Plaintiff provides no evidence that he was ever definitively informed by jail staff that the Watch Commander's level of review was the final level of review for exhaustion purposes. In fact, such an argument is inconsistent with the fact that the plain language of Section 1073 was posted in each pod at SMCJ during the time periods at issue. (Sanchez Decl. ¶ 5.) This argument also conflicts with the fact that Plaintiff is an experienced pro se litigant who, as mentioned above, had actual knowledge of the exhaustion requirement due to his experience in filing a previous civil suit, in which the Court directed him to present each and every claim he wished to bring in federal court to the jail's appeals process before filing his federal complaint. See Rodgers v. Horsley, Case No. C 00-00996 (SBA) (PR).

In a footnote directly following the aforementioned argument, Plaintiff also complains Defendants have never "directed Plaint./Grievance(s) toward Facility Commander." (Id. at 2.) The Court liberally construes this footnote to be an argument that jail staff should have forwarded Plaintiff's grievances to the Facility Commander after he received a response at the Watch Commander's level of review. This construction is based on the fact that once Plaintiff submitted the "Inmate Grievance Forms" to the Deputy/Correctional Officer, they proceeded through the higher levels of review automatically (without further action by Plaintiff). After being resolved at the Watch Commander's level, written decisions were issued. Plaintiff seems to argue that his grievances should have then proceeded to the Facility Commander automatically (again without any further action by him). The Court notes that Plaintiff has never pursued his grievances to the highest, Facility Commander's level of review. Rather, Plaintiff has consistently treated his duty to

1  exhaust as discharged upon filing his "Inmate Grievance Forms." Plaintiff's construction of the
2  procedure is incorrect. Jail staff are not responsible for forwarding a "Inmate Grievance Forms" to
3  the Facility Commander under Section 1073. Instead, it is the inmate's job to write a "letter to the . .
4  . Facility Commander" appealing the Watch Commander's decision. (SMCJ Inmate Grievance
5  Procedure at 2.)

6       In general, Plaintiff seems to argue that he was not allowed to present his various grievances
7  for review at the Facility Commander's level through no fault of his own. The Court finds the Ninth
8  Circuit's decision in Marella instructive. In that case, plaintiff Marella's administrative grievance
9  was denied at the initial stage as untimely because it was filed thirty-three days after the incident.
10  568 F.3d at 1026. The screening form Marella received after the denial included the following
11  language: "[t]his screening action may not be appealed unless you allege the above reason is
12  inaccurate." Id. at 1027. Marella acknowledged that the grievance was untimely; therefore, he
13  lacked any grounds for appeal. Id. However, Marella argued that during the period in which his
14  grievance would have been timely that he had been hospitalized and was segregated. Id. at 1026.
15  As a result, Marella claimed that he lacked both access to the appropriate forms and knowledge of
16  the procedural requirements. Id. The district court dismissed for failure to exhaust. However, the
17  Ninth Circuit reversed and remanded the action. The court noted that "if the district court finds that
18  [Marella] had the opportunity and ability to file his initial grievance timely, but failed to do so, his
19  case should be dismissed." Id. at 1028. The Marella court cautioned against rigidly applying the
20  requirements of proper exhaustion, or finding "no exceptions to the timely filing requirement exist."
21  Id. at 1027.

22       The circumstances presented in this case are distinguishable from Marella. Unlike Marella,
23  the record in this case demonstrates that Plaintiff had the opportunity and ability to properly exhaust,
24  but failed to do so. Plaintiff has a wealth of experience with the grievance procedure at SMCJ.
25  Dating back to 1993, Plaintiff has been incarcerated at SMCJ twenty-two times during which he
26  filed "many grievances." (Sanchez Decl. ¶ 6.) Focusing solely on the period of time at issue in this
27  case, December 19, 2006 through May 27, 2007, Plaintiff filed thirty-six grievances pertaining to a
28  vast range of issues. (Id. ¶ 7.) Beyond Plaintiff's practical experience with SMCJ's grievance

13

policies and procedures, Plaintiff, like all SMCJ inmates, was given constructive notice of the proper method of exhaustion under Section 1073 as the policy was posted in every pod at SMCJ during Plaintiff's incarceration. (Id. ¶ 5.) Finally, Plaintiff maintains actual notice of the exhaustion requirement because this Court has previously instructed him to exhaust his claims by presenting them to the jail's appeals process before actually raising them in a § 1983 action. (May 8, 2000 Order in Case No. C 00-00996 (SBA) (PR) at 2.) Despite Plaintiff's experience with and knowledge of Section 1073, he never appealed the Watch Commander's decisions in any of the grievances relating to his surviving claims to the Facility Commander. (Sanchez Decl. ¶ 11.) As a result, Plaintiff's surviving appeals were abandoned at the Watch Commander's level of review. (Id. ¶ 12; Ex. 4-6.) Instead of submitting his surviving grievances to the Facility Commander's level of review as directed, Plaintiff chose to proceed straight to federal court.

Unlike Marella, Plaintiff never received a screening form containing language that "[t]his screening action may not be appealed unless you allege the above reason is inaccurate," and he was never told by jail staff the he could not pursue the Watch Commander's decisions to a higher level of review. While Plaintiff claims that he was informed that the Watch Commander's level of review was the final level of review, the Court has already found that he has failed to support this claim. Furthermore, the evidence before the Court proves otherwise. Plaintiff was made aware of the correct procedure of proper exhaustion under Section 1073 by virtue of his experience filing several grievances and a previous civil suit. This extensive experience further distinguishes the instant action from Marella in that Plaintiff demonstrated his knowledge of and access to the proper administrative appeal forms and procedures. Therefore, the Court finds unavailing Plaintiff's argument that he was not allowed pursue his grievances to the Facility Commander's level of review through no fault of his own. It is clear that Plaintiff had the opportunity and ability to properly exhaust, but failed to do so. Marella, 568 F.3d at 1028.

In sum, Woodford makes clear that a prisoner must complete the administrative review process in accordance with the applicable procedural rules as a prior to bringing suit in federal court. 548 U.S. at 83-83. Plaintiff failed to exhaust the grievances relating to his surviving claims despite

14

the fact that he was dissatisfied with the Watch Commander's decisions.  In each case, Plaintiff abandoned his claims by failing to pursue them through the final, Facility Commander's level of review.  Plaintiff has failed to exhaust his administrative remedies; thus, all his surviving claims are DISMISSED as unexhausted.  Accordingly, the Court GRANTS Defendants' motion to dismiss.  However, Defendants request that the claims be dismissed with prejudice is DENIED.  The proper course in claims that are dismissed due to failure to exhaust administrative remedies is dismissal without prejudice to refiling.  McKinney v. Carey, 311 F.3d 1198, 1200-1201 (9th Cir. 2002).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (docket no. 49) is GRANTED.  Plaintiff's surviving claims are DISMISSED without prejudice to refiling after exhausting California's prison administrative process.  See McKinney, 311 F.3d at 1199-1201.  The Court has rendered its final decision on this matter; therefore, this Order TERMINATES Plaintiff's case.  The Clerk of the Court shall terminate all pending motions and close the file.

This Order terminates Docket no. 49.

IT IS SO ORDERED.

DATED:  March 31, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL D. RODGERS, | Case Number: CV07-00520 SBA |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| DON HORSLEY et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 7, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Russell Dwayne Rodgers
2458 Illinois Street
East Palo Alto, CA 94303

Dated: April 7, 2010

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.07\Rodgers0520.grantMTD.frm          16